**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

—————————

**No. 23-1360**

—————————

MICHAEL SHIPTON,

Plaintiff - Appellant,

v.

BALTIMORE GAS AND ELECTTRIC COMPANY; EXELON CORPORATION, EXELON BUSINESS SERVICES COMPANY, LLC; MICHAEL GROSSCUP; EDWARD WOLFORD; JEANNE STORCK; BINDU GROSS,

Defendants – Appellees,

and

THEOS MCKINNEY,

Defendant.

--------------------------------

A BETTER BALANCE; NATIONAL INSTITUTE FOR WORKERS' RIGHTS; NATIONAL EMPLOYMENT LAWYERS ASSOCIATION,

Amici Supporting Appellant.

—————————

Appeal from the United States District Court for the District of Maryland, at Baltimore. Lydia Kay Griggsby, District Judge.  (1:20-cv-01926-LKG)

—————————

Argued:  March 21, 2024                                      Decided:  July 31, 2024

—————————

Before HARRIS and BENJAMIN, Circuit Judges, and FLOYD, Senior Circuit Judge.

---

Affirmed by published opinion.  Senior Judge Floyd wrote the opinion in which Judge Harris and Judge Benjamin joined.

---

**ARGUED:**  Tonya Baña, TONYA BAÑA, LLC, Baltimore, Maryland, for Appellant. Elena D. Marcuss, MCGUIREWOODS LLP, Baltimore, Maryland, for Appellees.  Erika Jacobsen White, JOSEPH, GREENWALD AND LAAKE, P.A., Greenbelt, Maryland, for Amici Curiae.  **ON BRIEF:**  Adam T. Simons, Rebecca W. Lineberry, Baltimore, Maryland, Jonathan Y. Ellis, MCGUIREWOODS LLP, Raleigh, North Carolina, for Appellees.   Jason Solomon, NATIONAL INSTITUTE FOR WORKERS' RIGHTS, Concord, California; Carla Brown, CHARLSON BREDEHOFT COHEN BROWN & NADELHAFT, P.C., Reston, Virginia, for Amici Curiae.

---

2

FLOYD, Senior Circuit Judge:

Appellant Michael Shipton appeals the district court's order granting summary judgment in favor of his employer Baltimore Gas & Electric ("BGE") on claims related to use of rights conferred under the Family Medical Leave Act ("FMLA"). For the reasons cited below, we affirm.

I.

Shipton is a middle-aged man who has Type 2 diabetes. He worked at BGE, a natural gas and electric utility company, as an underground gas mechanic, which is a physically demanding job. Because of Shipton's diabetes, he would periodically miss work because his symptoms would flare up.

In August 2017, Shipton requested and was granted intermittent FMLA leave based on a health provider certification that he was an uncontrolled diabetic who experienced episodes of hypoglycemia.[1] A few months later, in January 2018, Shipton submitted and was granted a nearly identical certification for his continued FMLA leave.

In April 2018, Shipton took two days off because of severe foot pain, caused by neuropathy related to his diabetes. BGE informed him that the existing FMLA certification established leave only for his diabetes-related hypoglycemia and not for the neuropathy. When BGE questioned whether he could safety operate a commercial vehicle related to his job, Shipton submitted letters, including one from his doctor, stating that he had not

---

[1] Shipton's physician assistant, Chelsey Hamershock, provided his certification. JA 90-94.

suffered from complications of hypoglycemia since 2017.  Shipton stated he believed his certifications provided a "generalized statement about diabetes" and that he was able to use FMLA leave for neuropathy.  Shipton then submitted a new medical certification from his treating endocrinologist describing his neuropathy symptoms.  JA 214-18, 633, 636, 640.  BGE approved this request.  JA 291-92, 294-97, 636.  However, in June 2018, after Shipton took additional days of FMLA leave, BGE told him the company was troubled by the alleged "conflicting medical documentation" in his paperwork and terminated his employment.  JA 108, 276.

In June 2020, Shipton filed a complaint in federal court citing interference and retaliation claims based on his use of FMLA leave against BGE, Exelon Corporation, and Exelon Business Services Company ("EBSC") and various individual defendants—Michael Grosscup (Shipton's direct supervisor), Edward Woolford (Shipton's second level supervisor), and Bindu Gross (an ESBC employee who worked at BGE as labor relations principal).[2]  In their motion for summary judgment, defendants argued that Shipton could not prevail on his claims because BGE terminated him based on an "honest belief" that he misused his FMLA leave and submitted conflicting medical documentation.  Defendants argued his remaining claims based on events prior to his termination were time-barred because there was no evidence defendants recklessly or knowingly violated the FMLA and therefore no basis to apply the FMLA's extended three-year statute of limitations.

The district court granted summary judgment in favor of defendants as to all of

---

[2] BGE is a subsidiary of Exelon Corporation, which is an affiliate of ESBC.

4

Shipton's claims, denied Shipton's cross motion for summary judgment, and dismissed his amended complaint. JA 738-39, 753-61. Shipton timely appeals.

On appeal, Shipton argues the district court erred in applying the "honest belief doctrine," in granting summary judgment on Shipton's claims in light of the evidence in the record, in granting summary judgment on Shipton's claims that predated termination of employment, and in dismissing defendants Exelon, ESBC, and individual defendants. National Institute for Workers' Rights, National Employment Lawyers Association, and a Better Balance filed an amicus brief supporting Shipton and participated in oral argument.

## II.

### A.

The Court reviews a district court's grant of summary judgment *de novo*, "applying the same legal standards as the district court, and viewing all facts and reasonable inferences therefrom in the light most favorable to the nonmoving party." *Heyer v. U.S. Bureau of Prisons*, 849 F.3d 202, 208 (4th Cir. 2017) (quoting *TMobile Ne., LLC v. City Council of Newport News*, 674 F.3d 380, 384–85 (4th Cir. 2012)). Summary judgment is appropriate if there is "no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a).

The FMLA entitles eligible employees to take "12 workweeks of leave" during a 12-month period for a qualifying "serious health condition that makes the employee unable to perform the functions of" his job. 29 U.S.C. § 2612(a)(1)(D). "When an employee requests FMLA leave, or when the employer acquires knowledge that an employee's leave may be for an FMLA-qualifying reason, the employer must notify the employee of the

employee's eligibility to take FMLA leave within five business days, absent extenuating circumstances." 29 C.F.R. § 825.300(b)(1). If the employer determines that the requested leave will not be designated as FMLA-qualifying, "the employer must notify the employee of that determination." *Id*. § 825.300(d)(1).

The FMLA makes it unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise any right provided under the FMLA. 29 U.S.C. § 2615(a)(1). An employee has a cause of action under 29 U.S.C. § 2617 when they can prove that "(1) the employer interfered with his exercise of FMLA rights and (2) the interference caused the employee prejudice." *Adkins v. CSX Transp., Inc*., 70 F.4th 785, 796 (4th Cir. 2023). Thus, to make out an FMLA interference claim, an employee must demonstrate that "(1) he is entitled to an FMLA benefit; (2) his employer interfered with the provision of that benefit; and (3) that interference caused harm." *Adams v. Anne Arundel Cnty. Pub. Schs.*, 789 F.3d 422, 427 (4th Cir. 2015). Interference claims are "prescriptive." *Id.* at 426. This means employer intent is irrelevant and all a plaintiff must show is that they qualified for a right that was denied. *Sharif v. United Airlines, Inc.*, 841 F.3d 199, 203 (4th Cir. 2016).

In an FMLA retaliation claim, it is "unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter." 29 U.S.C. § 2615(a)(2). Unlike interference claims, retaliation claims are *proscriptive* and, therefore, employer intent is relevant. A plaintiff can demonstrate FMLA retaliation by either (1) producing direct and indirect evidence of retaliatory animus or (2) demonstrating "intent by circumstantial evidence, which we

6

evaluate under the framework established for Title VII cases in *McDonnell Douglas*." *Fry v. Rand Constr. Corp.*, 964 F.3d 239, 244 (4th Cir. 2020) (internal citation omitted).

Under the framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 800–06 (1973), an employee must make *prima facie* showing that he engaged in protected activity, that the employer took adverse action against him, and that adverse action was casually connected to the plaintiff's protected activity. *Yashenko v. Harrah's NC Casino Co., LLC*, 446 F.3d 541, 550–51 (4th Cir. 2006). If the employee demonstrates sufficient evidence to support a *prima facie* showing of retaliation, and the employer offers a non-discriminatory explanation for the termination, the employee bears the burden of establishing the employer's proffered explanation is pretext for FMLA retaliation. *Id.*

We consider Shipton's arguments in turn.

B.

Shipton first argues that the district court misapplied the "honest belief doctrine" to this case. The doctrine states an employer does not interfere with an employee's exercise of FMLA rights when it terminates an employee based on the "honest belief" that the employee is not taking FMLA leave for an approved purpose, regardless of whether such belief is correct. The Fourth Circuit has expressly declined to address the application of the "honest belief doctrine" to FMLA interference claims or retaliation claims. *See, e.g.*, *Adkins*, 70 F.4th at 795 (explaining the doctrine but not addressing it in the FMLA interference context because plaintiffs' claim failed on other grounds); *Sharif*, 841 F.3d at 207 n.2 (noting the parties argued extensively over application of the "so-called" honest

7

belief rule to the plaintiff's FMLA retaliation claim but declining to address the doctrine because the issues of the case were "most profitably addressed through the well-established proof scheme of *McDonnell Douglas* and its progeny").

We again decline to address the doctrine today. Notably, in the district court below Shipton did not argue the district court erred in applying the doctrine. Instead, Shipton argues that the evidence did not support BGE's "honest" belief. *Shipton v. Baltimore Gas & Elec. Co.*, No. 20-cv-01926 (D. Md.), Pl.'s Mem. in Opp'n to Defs.' Mot. for Summ. J. and Cross-Mot. for Summ. J., ECF No. 50; Pl.'s Reply, ECF No. 64. "It is well established that this court does not consider issues raised for the first time on appeal, absent exceptional circumstances." *Hicks v. Ferreyra*, 965 F.3d 302, 310 (4th Cir. 2020) (cleaned up). Shipton does not point to any "exceptional circumstances" that necessitate our review of this issue for the first time, and this Court cannot find anything in the record that demonstrates "a reason sufficient to clear this high bar." *Williams v. Kincaid*, 45 F.4th 759, 776 (4th Cir. 2022) (cleaned up). In fact, Shipton did not file a reply to explain the new argument on appeal. Regardless, the issue raised in the district court—refuting BGE's "honest" belief—is distinct from the one raised on appeal, questioning whether the doctrine applies whatsoever, and therefore did not sufficiently preserve the issue for appellate consideration. We require preservation of issues to ensure district courts "be fairly put on notice as to the substance of [an] issue" before resolving it in the first instance. *Nelson v. Adams USA, Inc.*, 529 U.S. 460, 469 (2000). This calls for parties to "do more than raise a non-specific objection or claim." *Wards Corner Beauty Acad. v. Nat'l Accrediting Comm'n of Career Arts & Scis.*, 922 F.3d 568, 578 (4th Cir. 2019).

Even if Shipton responded to the preservation issue, we do not find exceptional circumstances exist in the instant case. Additionally, the record demonstrates that the district court did not err in granting summary judgment in both the FMLA interference and retaliation claims.

FMLA retaliation and interference claims are different causes of action and Shipton cannot demonstrate a genuine dispute of material fact on either action. As noted above, a cause of action for FMLA inference requires a showing that the employer interfered with FMLA rights, and the interference caused the employee prejudice. *Adkins*, 70 F.4th at 796. FMLA interference is prescriptive and employer intent is not relevant. *Sharif*, 841 F.3d at 203. Shipton argues the district court erred in awarding summary judgment because the court failed to consider that Shipton later submitted a request due to neuropathy (where it originally specified leave for hypoglycemia), and the request was approved. Opening Br. 43-44. The record demonstrates conflicting paperwork, and therefore Shipton's argument that just because he submitted a later request nullifies the claim of misconduct is incorrect. In *Adkins*, employers terminated the employees after an investigation into their dishonesty over use of medical leave. *Adkins*, 70 F.4th at 797 (citing *Vannoy v. Fed. Rsrv. Bank of Richmond*, 827 F.3d 296, 304–05 (4th Cir. 2016) ("The FMLA does not prevent an employer from terminating an employee for poor performance, misconduct, or insubordinate behavior.")). We were clear in *Adkins* that "employers must be able to investigate and address plausible allegations that employees have been dishonest in their medical leave claims." *Id.* Therefore, because the FMLA allows for an employee to be

9

terminated for misconduct, the district court did not err in granting summary judgment as to the interference claim.[3]

Shipton's FMLA retaliation claim cannot prevail either. Shipton argues the district court did not take into account the following direct evidence: (1) his FMLA certifications covered him for any diabetes-related conditions; (2) BGE's documents showed that he took FMLA leave for neuropathy (notwithstanding his certification for hypoglycemia); and (3) Gross "admitted" that the basis for BGE's decision to terminate Shipton's employment "is the fact that he was using FMLA for neuropathy when Hamershock's certifications only mentioned that he needed leave for episodes of hypoglycemia." Opening Br. 44-45. However, as the undisputed evidence shows, Shipton submitted certifications that he took FMLA leave for hypoglycemia and later submitted letters from the same healthcare providers that he had not experienced hypoglycemia for over two years. After BGE investigated and found his medical paperwork and statements contradictory, it believed he was misusing leave. Just because BGE's termination reason was related to his FMLA leave, that is not necessarily direct evidence of discriminatory intent. We have said employee discipline for suspected dishonesty related to FMLA leave is not alone

---

[3] Shipton's brief is unclear as to what his theory of interference is. We assume Shipton's theory is the right for an employee who takes FMLA leave for its intended purpose to be "restored to their position or an equivalent position." 29 U.S.C. § 2614(a)(1). However, we have noted the FMLA does not afford an employee an "absolute right to restoration." *Yashenko*, 446 F.3d at 549.

10

necessarily evidence of discriminatory intent, and reiterate so again. *Adkins*, 70 F.4th at 793.[4]

Shipton also cannot show a genuine dispute as to indirect evidence under the *McDonnell Douglas* burden-shifting framework. Shipton met his prima facie burden of showing that (1) he engaged in protected activity, notably the use of FMLA leave; (2) BGE took adverse action against him; and (3) a causal nexus exists between the use of FMLA leave and termination. Therefore, the burden shifts to BGE to articulate a legitimate, nondiscriminatory reason for terminating Shipton. *Yashenko*, 446 F.3d at 550-51; *Laing v. Fed. Exp. Corp.*, 703 F.3d 713, 721 (4th Cir. 2013). BGE's proffered reason for terminating Shipton was misuse of FMLA leave.

But Shipton has not demonstrated that BGE's reasoning was pretextual, the last step in the burden-shifting framework. As we stated in *Adkins*, our focus must be on the "perception of the decisionmaker." *Adkins*, 70 F.4th at 794 (internal citations omitted). Shipton argues that BGE's reasoning was pretextual because BGE employees made up "false" allegations that Shipton was misusing his FMLA leave and inappropriately considered his FMLA leave during performance reviews. JA 759. However, BGE's proffered reason does not appear pretextual, and Shipton's evidence does not amount to a

---

[4] Shipton combats the contention that BGE believed Shipton was dishonest by citing to Gross's deposition, in which he stated Shipton was not dishonest and just believed the certification covered all diabetes-related complications, including his neuropathy. JA 572. However, in the same statement Gross indicated he still could not reconcile the fact that Shipton had conflicting paperwork. Therefore, we find this statement does not rise to the level of a genuine dispute of material fact.

11

genuine dispute of material fact.  The evidence in the record demonstrates that BGE believed he was misusing leave.  While he may not have been *actually* misusing leave and clarified his FMLA certification after the fact, this inquiry only has us determine whether the employer's reason was legitimate and nondiscriminatory at the time and not "whether the reason was wise, fair, or *even correct*."  *Adkins*, 70 F.4th at 794.   In short, the undisputed evidence shows that BGE believed Shipton was misusing his FMLA leave.  BGE conducted fact-finding interviews, and because it could not reconcile conflicting paperwork, it terminated him.  Just because Shipton can *now* explain (or attempted to explain it when BGE brought up the discrepancy) some of the conflicting statements and his medical paperwork, we find his explanation does not amount to a genuine dispute as to the employer's reasoning at the time of the termination.  We have been clear that courts do not "sit as a kind of super-personnel department weighing the prudence of employment decisions."  *Feldman v. Law Enf't Assocs. Corp.*, 752 F.3d 339, 348 (4th Cir. 2014) (quoting *DeJarnette v. Corning Inc.*, 133 F.3d 293, 299 (4th Cir. 1998)).

Because it is undisputed that Shipton submitted conflicting medical paperwork that BGE could not reconcile, and even though Shipton genuinely believed he was appropriately using FMLA leave for neuropathy (because his certification encompassed all diabetes-related complications), his termination did not violate FMLA protections.  An employer should be able to investigate claims of FMLA misuse, and even though Shipton

can now explain the discrepancies, BGE had credible reason to terminate Shipton.[5] *See, e.g.*, *Tillman v. Ohio Bell Tel. Co.*, 545 F. App'x 340, 362 n.13 (6th Cir. 2013) (Rosen, J., concurring) ("Nothing in this regulation even remotely requires that an employer show that its legitimate reason is 'unrelated' to the employee's exercise of FMLA rights in all cases.").

## C.

Next, Shipton argues the district court erred in granting summary judgment on his claims that predated his termination in June 2018.

Shipton filed suit in 2020, and the default statute of limitations under the FMLA is two years. 29 U.S.C. § 2617(c)(1). However, if the employer engaged in a willful violation of the FMLA, the limitations period is extended to three years. 29 U.S.C. § 2617(c)(2). Shipton must demonstrate that BGE "knew or showed a reckless disregard regarding whether its conduct was prohibited." *Settle v. S.W. Rodgers Co.*, 182 F.3d 909 (4th Cir. 1999) (unpublished table decision). Shipton's evidence that BGE employees accused him of misusing leave was part of their investigation to monitor the conflicting statements and monitor his absences. Because BGE attempted to get to the root of conflicting medical certifications and paperwork, those statements do not rise to an FMLA violation, let alone

---

[5] Of course, we do not hold that an employer has carte blanche authority to terminate an employee on the basis of unsubstantiated claims of misconduct related to FMLA leave. An employer must have a legitimate basis for believing an employee committed misconduct related to use of FMLA leave. *Vannoy*, 827 F.3d at 305 (finding employer had legitimate, non-discriminatory reasons for adverse employment action where employee failed to communicate properly about unscheduled absences and failed to complete performance improvement plan).

13

a willful violation. Shipton therefore is not entitled to the extended statute of limitations for his claims made under the FMLA.

D.

Lastly, Shipton argues the district court erred in granting summary judgment in favor of Exelon, EBSC, and the individual defendants on the ground they were not Shipton's "employer" under the FMLA.

Under the FMLA, an employer is "any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer." 29 U.S.C. § 2611(4)(A)(ii)(I). "Where one corporation has an ownership interest in another corporation, it is a separate employer" unless it meets either the joint employer or integrated employer test. 29 C.F.R. §§ 825.104, 825.106. While Shipton discusses the joint employer test, he does not show that it applies here.

Shipton argues that Exelon and ESBC are also liable because Exelon's name is on various policy documents, and Gross was an ESBC employee who provided services to BGE. However, this does not necessarily show evidence of common management or centralized control, as is required to show a joint employer. *See, e.g.*, *Engelhardt v. S.P. Richards Co.*, 472 F.3d 1, 6 (1st Cir. 2006) (refusing to hold parent company liable based on subsidiary's adoption of its policies, employment documents, forms, and payroll services).

While Shipton argues that there is substantial evidence that the three individual named defendants played a part in events that culminated in Shipton's termination, he does

14

not point to any evidence they had "sufficient responsibility or stature within the [defendant employer] to warrant the imposition of personal liability under the FMLA." *Caire v. Conifer Value Based Care, LLC*, 982 F. Supp.2d 582, 598 (D. Md. 2013) (alteration in original) (citation omitted).

Accordingly, we affirm the district court's grant of summary judgment on the grounds that Exelon, EBSC, and the individual defendants were not Shipton's "employer" under the FMLA.

## III.

For the foregoing reasons, the judgment of the district court is affirmed.

*AFFIRMED*

15